UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

        Plaintiff,

        v.

$3,585.00 UNITED STATES CURRENCY,

        Defendant,

MICHAEL WALLACE,

        Claimant.

**DECISION AND ORDER**

1:18-CV-00581 EAW

## INTRODUCTION

Plaintiff United States of America ("Plaintiff") brings an *in rem* action for the forfeiture of $3,585.00 United States currency ("Defendant Currency") pursuant to 28 U.S.C. §§ 1345 and 1355(a). Presently before the Court is Plaintiff's motion for a Default Judgment pursuant to Fed. R. Civ. P. 55(b)(2), and for an Order of Forfeiture. (Dkt. 8). Claimant Michael Wallace ("Claimant") opposes Plaintiff's motion. (Dkt. 11). For the reasons that follow, Plaintiff's motion is granted.

## BACKGROUND

The following facts are taken from Plaintiff's Verified Complaint. (Dkt. 1).

On October 24, 2017, the Buffalo Police Department ("BPD") executed a search warrant issued on the basis of a controlled purchase of crack cocaine at 134 Wick Street, Buffalo, New York. (Dkt. 1 at ¶ 5). When the officers arrived, they encountered two

individuals named Damien Dillard ("Dillard") and Anthony Lipscomb ("Lipscomb") outside the residence. (*Id.*). The officers saw Lipscomb throw a plastic bag containing crack cocaine onto the ground in front of 128 Wick Street, and Dillard throw a small amount of marijuana wrapped in paper onto the ground in front of 134 Wick Street. (*Id.*). The BPD arrested Lipscomb and Dillard and recovered Defendant Currency from Lipscomb's person. (*Id.*). Neither Lipscomb nor Dillard reside at 134 Wick Street. (*Id.*).

After the arrests, the BPD searched 134 Wick Street pursuant to the search warrant. During the search, the officers recovered heroin, crack cocaine, marijuana, and drug paraphernalia. (*Id.* at ¶ 6). They found two individuals in the attic, Darnell Caldwell ("Caldwell") and Wellmon Breaux ("Breaux"). (*Id.*). Marijuana was found in the front pocket of Caldwell's sweatshirt, and $6,391.00 in United States currency was discovered in Breaux's left front pants pocket. (*Id.*). A further search of the attic also produced a plate and razor containing crack cocaine residue. (*Id.*).

Lipscomb was arrested and charged with a fifth-degree felony for criminal possession of a controlled substance. (*Id.* at ¶ 7). The charge was eventually reduced, and he was given an adjournment in contemplation of dismissal. (*Id.*).

The BPD seized Defendant Currency on the basis that it was furnished, or was intended to be furnished, in exchange for controlled substances, or was proceeds traceable to exchanges of controlled substances, or had otherwise been used to facilitate violations of 21 U.S.C. § 801 *et seq.* (*Id.* at ¶ 3). Defendant Currency consisted of the following denominations: 1 one hundred-dollar bill; 13 fifty-dollar bills; 135 twenty-dollar bills; 12 ten-dollar bills; 2 five-dollar bills; and 5 one-dollar bills. (*Id.* at ¶ 8). Defendant Currency

was placed in and remains in the custody of the United States Marshals Service for the Western District of New York.

On November 1, 2017, a BPD dog named Destro and his handler conducted a search at BPD headquarters of Defendant Currency for the presence of the odor of narcotics, including marijuana, cocaine, heroin, crack cocaine, ecstasy, and methamphetamine. (*Id.* at ¶ 9). Destro indicated on a storage cabinet drawer that contained an envelope with Defendant Currency. (*Id.*).

On February 27, 2018, Lipscomb filed a claim in an administrative forfeiture proceeding for $85.00 of Defendant Currency. (*Id.* at ¶ 11). Also on that day Lipscomb's father, Claimant, who was represented by the same attorney as his son, filed a claim as to the remaining $3,500.00 of Defendant Currency, asserting that it was the rent proceeds from several of his properties. (*Id.*; Dkt. 11 at ¶ 4). Claimant alleges that he gave his son the money to deliver to Lipscomb's mother in order to pay her bills. (Dkt. 1 at ¶ 11). The claims halted the administrative forfeiture proceedings. (*Id.*).

On May 21, 2018, Plaintiff filed the instant action. (Dkt. 1). Copies of the Verified Complaint for forfeiture, arrest warrant *in rem*, and direct notice of forfeiture action, among other documents, were served on Claimant and on his attorney on May 31, 2018. (Dkt. 3). The arrest warrant *in rem* directs that "[a]ll persons asserting an interest in the defendant property and who have received direct notice of the forfeiture action must file a Verified Claim with the Clerk of this Court . . . **thirty-five (35) days** after the notice is sent." (Dkt. 1-2 at 1). It also states, "any person having filed such a claim shall also serve and file an answer to the complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure

within **twenty-one (21) days** after filing the claim." (*Id.*). On May 23, 2018, Plaintiff posted a notice of civil forfeiture regarding Defendant Currency on an official government internet site, http://www.forfeiture.gov, and it was posted for 30 consecutive days. (Dkt. 5).

On July 27, 2018, Plaintiff requested that the Clerk of Court enter default against Defendant currency pursuant to Federal Rule of Civil Procedure 55(a). (Dkt. 6). The Clerk entered default on July 30, 2018. (Dkt. 7).

On August 1, 2018, Plaintiff filed the instant motion for default judgment and order of forfeiture. (Dkt. 8). The motion was served on Claimant and on his attorney on August 2, 2018 (Dkt. 10), and responses were to be submitted by August 22, 2018 (Dkt. 9). On August 23, 2018, Claimant filed a response opposing the motion for default judgment. (Dkt. 11). He alleges that his initial failure to respond to the notice of forfeiture was "due to [his] unavailability and absence from the State of New York." (*Id.* at 1).

## DISCUSSION

### I.    Legal Standard

Under Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," then "the clerk must enter the party's default." After the clerk enters the default, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "The court may set aside an entry of default for good cause[.]" *Id.* at 55(c). The Second Circuit has "established three criteria that must be assessed in order to decide whether to relieve a party from default[.]" *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "These

criteria are: (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quotation omitted). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron*, 10 F.3d at 96. "Because there is a preference for resolving disputes on the merits, doubts should be resolved in favor of the defaulting party." *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001).

## II.    Forfeiture Action

"In rem forfeiture actions are governed by Rule G of the Forfeiture Rules and the Civil Asset Forfeiture Reform Act of 2000 ('CAFRA')[.]" *United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014) (footnote and citation omitted); *see* 18 U.S.C. § 983. "The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions also govern civil forfeiture claims." *Vazquez-Alvarez*, 760 F.3d at 197 n.3; *see* 18 U.S.C. § 981(b)(2); 21 U.S.C. § 881(b).

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir.1999); *see Vazquez-Alvarez*, 760 F.3d at 197 ("Standing is a prerequisite to challenging the forfeiture."). "While lack of statutory standing can be excused at the sound discretion of the trial judge, Article III standing is a

prerequisite for a court to attain subject matter jurisdiction over a matter." *United States v. $138,381.00 in U.S. Currency*, 240 F.Supp.2d 220, 227 (E.D.N.Y.2003) (citing *United States v. 4492 S. Livonia Rd.*, 889 F.2d 1258, 1262 (2d Cir.1989)).

"[A]n owner of property seized in a forfeiture action will normally have [constitutional] standing to challenge the forfeiture." *Cambio Exacto*, 166 F.3d at 527. However, "[w]here a claimant fails to comply with the procedural requirements of the Supplemental Rules, his claim may be stricken for lack of statutory standing." *United States v. $27,601.00 U.S. Currency*, 800 F. Supp. 2d 465, 467 (W.D.N.Y. 2011); *see also 4492 S. Livonia Rd.*, 889 F.2d at 1262 (distinguishing between "Article III standing, which requires the claimant to demonstrate a sufficient interest in the property to create a 'case or controversy' in the constitutional sense," and "statutory standing, which requires the claimant to comply with certain procedural requirements[.]").

A claimant has the burden of demonstrating statutory standing. *Mercado v. U.S. Customs Serv.*, 873 F.2d 641, 644 (2d Cir. 1989) ("The burden was on [the claimant] to prove that he had standing[.]"). Strict compliance with the Supplemental Rules is generally required, *United States v. Amiel*, 995 F.2d 367, 371 (2d Cir.1993), and a claimant's failure to comply with the procedural filing requirements may result in a loss of standing to contest a claim. *See Cambio Exacto*, 166 F.3d at 526 (finding a claimant lacks statutory standing when he does not meet the specific deadlines set in the Supplemental Rules); *United States v. 479 Tamarind Drive*, No. 98 Civ. 2279(DLC), 2011 WL 1045095, at *3 (S.D.N.Y. Mar. 11, 2011) ("When a claimant fails to file an answer, he or she does not have statutory

standing to bring a claim."). "However, a court has discretion in appropriate circumstances to depart from the strict compliance standard." *Amiel*, 995 F.2d at 371.

Claimant's objection[1] alleges an ownership interest in the currency, which is further corroborated by the fact that his son claimed an interest in only $85—the difference between the amount seized and the amount of his father's claim. (Dkt. 1 at ¶ 11; Dkt. 11 at 2); *see Cambio Exacto*, 166 F.3d at 527 ("[A]n allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture."). Therefore Claimant has properly established constitutional standing. *See, e.g.*, *United States v. $421,090.00 in U.S. Currency*, No. 11-CV-00341(JG), 2011 WL 3235632, at *3 (E.D.N.Y. July 27, 2011) (finding that ownership is sufficient to establish Article III standing because "[i]f the claimant indeed owns $25,000 of the funds, he will suffer a palpable injury—deprivation of the $25,000—as a direct result of what he alleges would be an illegal forfeiture").

However, Claimant has not adhered to the procedural requirements of Rule G(5)(a). He was served via direct notice as is required by Rule G(4)(b)(i), and he did not file a claim by the time stated in the notice—July 9, 2018.[2] In fact, the Claimant did not file his claim in the instant action until 45 days after the direct notice response deadline and 32 days after the publication response deadline. Additionally, Rule G(5)(b) requires a claimant to "serve

---

[1] The objection filed by Claimant meets the requirements of Rule G(5)(a)(i), so the Court accordingly treats the objection as Claimant's claim.

[2] The time stated in the notice, July 9, 2018, was more than 35 days after the notice was sent to Claimant on May 31, 2018, and thus the notice complied with the requirements of Rule G(4)(b)(ii).

and file an answer to the complaint . . . within 21 days after filing the claim," but Claimant has not served or filed an answer to the Complaint to date. Claimant alleges that his initial failure to file a claim was "due to [his] unavailability and absence from the State of New York." (Dkt. 11 at 1).

"[T]echnical noncompliance with the procedural rules governing the filing of forfeiture claims will be excused where there is a sufficient showing of interest in the property." *U.S. (Drug Enforcement Agency) v. One 1987 Jeep Wrangler Auto VIN No. 2BCCL8132HBS12835*, 972 F.2d 472, 481 (2d Cir. 1992); *see 4492 S. Livonia Rd.*, 889 F.2d at 1262 (holding that when a claimant makes "a sufficient showing of interest in the property through filing with the court a motion and accompanying affidavits, technical noncompliance with the procedural rules governing the filing of claims may be excused"). "Courts typically exercise their discretion when claimants have timely placed the court and government on notice of their interest in the property and intent to contest the forfeiture, recognizing both the good-faith effort put forth and the lack of prejudice to the government under such circumstances." *$138,381.00*, 240 F. Supp. 2d at 230.

The Court finds Claimant has not made a sufficient showing of interest in the property for the Court to excuse his procedural non-compliance. "[T]he filing of an administrative claim with [a government agency] does not satisfy the verified claim obligation," *United States v. $1,437.00 Currency*, 242 F. Supp. 2d 193, 196 (W.D.N.Y. 2002). The Complaint notes that Claimant filed a claim for the $3,500 to halt the administrative forfeiture proceedings, and the Court's research did not find any instance where the *government* mentioning a previously filed administrative claim in a judicial

forfeiture complaint is sufficient to constitute notice by the *claimant*. As the claim currently before the Court was also not submitted in a timely fashion, the Court finds Claimant did not timely place the Court on notice of his interest in the property and intent to contest the forfeiture, and accordingly will not excuse his procedural non-compliance.

Additionally, "[a] claimant in a civil forfeiture action may file a late claim upon a showing of 'excusable neglect' under Federal Rule of Civil Procedure 6(b)(2)." *United States v. Contents of Account No. 901121707*, 36 F. Supp. 2d 614, 616 (S.D.N.Y. 1999); *see, e.g., United States v. $541,395.06 U.S. Currency*, No. 10-CV-6555-CJS, 2012 WL 3614294, at *3 (W.D.N.Y. Aug. 21, 2012) ("[A] court has the discretion to excuse a missed deadline if the claimant can show 'excusable neglect.'"). In applying the excusable neglect standard:

> [C]ourts have emphasized the equitable and fact-specific nature of the inquiry, and have examined such factors as the reasons for the prospective claimants delay, the prospective claimants good faith, whether the Government encouraged the delay, whether the prospective claimant was proceeding *pro se*, whether the prospective claimant advised the Government of its interest in the defendant-in-rem before the claim deadline, and whether the Government would be prejudiced by allowing the later filing.

*Account No. 901121707*, 36 F. Supp. 2d at 617; *see Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395 (1993) (holding courts should examine the following when considering whether there has been excusable neglect: "the danger of prejudice to the [non-claimant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."). However, "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule

and . . . where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366-67 (2d Cir. 2003) (quotation and internal alteration omitted).

The Court finds that Claimant has not demonstrated excusable neglect. Rule G(5) is clear, and its requirements were served on Claimant in the notice of forfeiture. (Dkt. 3); *see United States v. $10,300.00 U.S. Currency*, No. 10-CV-6103-CJS, 2014 WL 3404946, at *2 (W.D.N.Y. July 10, 2014) (holding the claimant's failure to comply with Rule G(5) was grounds for denying the motion to vacate the default); *United States v. Approximately $168,052.25 Seized from Northfield Bank Account No. 503501314 Held in the Name of Metro Sport N.Y. Corp.*, No. 14-CV-4219 (NGG)(RER), 2016 WL 1169242, at *4 (E.D.N.Y. Mar. 16, 2016) (recommending dismissal of the claimant's motion to set aside the default judgment based on a lack of statutory standing due to the claimant's failure to comply with Rule G), *adopted by* 2016 WL 1266947 (E.D.N.Y. Mar. 31, 2016).

Claimant offers a threadbare explanation as to why he did not comply with Rule G(5), stating it was "due to [his] unavailability and absence from the State of New York." (Dkt. 11 at 1). He offers no reason as to why he was allegedly out-of-state for the entire two-and-a-half month period from when Plaintiff served the notice of forfeiture on him until Claimant submitted his claim to the Court and makes no allegation that Plaintiff encouraged the delay in submission. *See Silivanch*, 333 F.3d (discussing that the Second Circuit focuses on "the reason for the delay, including whether it was within the reasonable control of the movant" when determining whether there has been excusable neglect

(quoting *Pioneer*, 507 U.S. at 395)). Even if Claimant was out-of-state during that time, Claimant was not proceeding *pro se*, and Plaintiff served the notice of forfeiture with the relevant procedural rules on Claimant's counsel. (Dkt. 3); *see United States v. $417,143.48*, No. 13-CV-5567 (MKB), 2015 WL 5178121, at \*9 (E.D.N.Y. Sept. 2, 2015) ("It is not clear that counsel's failure to read the clear language of Forfeiture Rule G forgives [the claimant's] failure to file a claim in compliance with those rules, especially given the clarity of the rules and the fact that the rules were clearly outlined in the Warrant."), *aff'd*, 682 F. App'x 17 (2d Cir. 2017). Moreover, Claimant has made no showing of good faith, as demonstrated by his cursory explanation for the late filing.

While Plaintiff has not claimed prejudice if the Court recognizes this later filing, as demonstrated by its lack of response or request to submit such a response to Claimant's objection, *see United States v. Certain Funds on Deposit in Account No. 01-0-71417, Located at the Bank of N.Y.*, 769 F. Supp. 80, 83 (E.D.N.Y. 1991) (holding that "the lack of opposition by the [g]overnment" was a ground for allowing the filing of late notices of claim when the claimant had filed a concurrent action in state court), the Court finds this factor is outweighed by the others discussed above. *See $168,052.25*, 2016 WL 1169242, at \*4 (holding the claimant had not shown excusable neglect, even through the government would not suffer any prejudice, because the claimant's "unexplained delay weighs heavily against a favorable exercise of discretion"); *$417,143.48*, 2015 WL 5178121, at \*9 ("[E]ven though the government may have been on notice of [the] potential claim and there is no immediate prejudice to the government, there is no indication that [the claimant] has

been pursuing her rights diligently in this action, and leave to amend her claim would be futile.").

Accordingly, the Court finds Claimant's procedural non-compliance is not excused and that Claimant accordingly lacks statutory standing to contest the forfeiture action.

## CONCLUSION

Plaintiff's motion for a default judgment and for an order of forfeiture is granted. The Clerk of Court is instructed to enter Judgment by Default against Defendant Currency. It is hereby

ORDERED, that Defendant Currency be and hereby is forfeited to the United States of America, pursuant to Title 21, United States Code, Section 881(a)(6), and is to be disposed of by United States Marshals Service according to law; and it is further

ORDERED, that all claims and interests of any individual or entity in Defendant Currency are forever forfeited, closed, and barred.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: February 4, 2019
       Rochester, New York